## CITY OF PHILADELPHIA v. STANDARD OIL CO. OF PENNSYLVANIA.

### No. 16128.

District Court, E. D. Pennsylvania.
June 27, 1934.

G. Coe Farrier, Asst. City Sol., and David J. Smyth, City Sol., both of Philadelphia, Pa., for plaintiff.

W. James MacIntosh and William Clarke Mason, both of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

The Standard Oil Company, the defendant, is an owner of land with riparian frontage on the Schuylkill river within the limits of the city of Philadelphia. That city, acting under authorization given to it by a statute of the state of Pennsylvania enacted in 1913 (Act July 22, 1913, P. L. 911 [53 PS Pa. § 4351]), has built a retaining structure variously called a bulkhead or mud fence, consisting of sheet piling of a substantial and permanent character, approximately along the low-water mark in front of the defendant's property. It is part of a structure or series of such structures extending along the river on both sides for a distance of some 5 miles, the entire work being for the improvement of navigation. This suit was brought under the statute referred to for the recovery of $107,507.89, representing the cost of a portion of the structure, together with a statutory penalty for its use. Jury trial was waived and the case tried to the court.

The statute provides that no riparian owner shall use the contemplated retaining structure "for the purpose of constructing, extending, altering, improving or repairing, any wharf, or other building in the nature of a wharf, or other harbor structure, or for other wharf purposes" without paying the cost of so much of it as is so used, and a further per diem penalty is provided for such use without paying. The city's claim is based upon the alleged use, for wharf purposes, by the defendant of 895 feet 10 inches of the mud fence. The defendant admits that it has so used two portions, totaling 95 feet 8 inches in length, and has tendered the cost of the same amounting to $11,249.22. As to the balance, the controversy arises as follows: The defendant has constructed two wooden wharves on piling and has incorporated a length of the mud fence into each of them as its shoreward support. These are the two portions which the defendant admits using and which it is willing to pay for. The two wharves extend into the river 20 feet, are protected by a line of dolphins located just inside the harbor line established by the government, and are connected with the shore by runways. The water in front of these wharves was not deep enough to float the vessels which it was anticipated would be brought to them, so the defendant proceeded to dredge the river bottom in front of its property for a distance of 895 feet 10 inches, in part to

a depth of 30 feet (in front of the large, or steamer wharf) and in part to a depth of 12 feet (in front of the small, or barge wharf), the entire basin thus made being wide enough to accommodate good sized vessels and extending not only in front of both wharves but also along the mud fence above and below them.

The city contends that this ship basin or slip could not be maintained without the aid of the mud fence which, it says, keeps the shore from sloughing or silting into it, and that therefore the defendant is using for wharf purposes all that part of the structure which lies to the shoreward of the ship basin. If this is true, liability under the statute for the cost and penalty would follow.

The defendant's position is:

First, that the mud fence is of no value whatever in maintaining its ship basin and that therefore it does not use it at all.

Second, that even if it is an aid and is being used, the use is not for wharf purposes within the meaning of the statute.

Third, that if construed to cover such a use, the statute would be unconstitutional, because the result would be to impose upon the defendant, as an individual, the cost of a general public improvement, or would amount to the taking of its property without compensation.

Upon the fact issue, I find that the mud fence in front of the defendant's property does act substantially (though precisely to what extent I cannot determine) to prevent the muddy banks of the river from sloughing off into the dredged ship basin. It would, no doubt, be physically possible to maintain the ship basin without it, but it would require more frequent dredging and might make the cost prohibitive. In addition, if there were no fence there, the defendant would have to cut its shore further back in order to counteract the tendency of the mud to slide into the basin, by getting a more stable angle of repose for it. On the whole, I find, therefore, that the defendant is making use of the mud fence along the entire length of the ship basin.

The important question in the case thus becomes the construction to be given to the words "for other wharf purposes," in the statute which authorizes the work and fixes liability for the cost.

A careful reading of the statute in the light of the circumstances, the rules of statutory construction and the consequences of a different interpretation have convinced me that the protection of dredged basins for ships was not contemplated by the statute as a use of the mud fence which would impose its cost upon the owner.

It will be noted that, preceding these general words, a number of special uses are referred to all of which seem clearly to contemplate the physical incorporation of the mud fence into a structure, or at any rate its use in direct physical relation to something which is built upon the land ("any wharf, or other building in the nature of a wharf, or other harbor structure") rather than to the mere dredged river bottom. If the words "for wharf purposes" stood alone, it would certainly be a very close question because, while the word "wharf" strictly means a structure, it does necessarily involve the idea of a structure adjacent to water, and it may be that it also involves the idea that the water must be deep enough to float ships of sufficient draft to make it commercially useful. On the other hand, the doctrine of ejusdem generis is a major rule of construction generally followed except where it will defeat or hinder the plain purpose of the Legislature.

Parenthetically, it seems entirely likely that what the Legislature and the city had in mind in undertaking this improvement was a series of substantial docks which would ultimately extend for its entire length and which would necessarily include the mud fence as part of their physical structure, thus ultimately providing for the cost of the whole. If this is so, the building of the small light type of wharf which the defendant has constructed partially defeats the general scheme. Probably such use was not foreseen; but the practical working out of the plan has nothing to do with the Legislature's intention at the time of the enactment.

The title of the act of 1913, in which is recited the title of the original act to which it is a supplement, contains in that recital a catalogue of uses which includes not only wharves, piers, bulkheads, and docks, but also slips and basins thus showing, at least, a legislative consciousness of slips and basins as a dis-

tinct and different facility from wharves, and suggesting that when the words "wharf purposes" were used, the thing in mind was the structure and not the structure in combination with a required depth of water.

■ It is also necessary to consider the effect of the construction for which the city contends, because, in cases of doubtful interpretation, a construction which would result in the unconstitutionality of the statute must be avoided.

■ While the ownership of a riparian owner of land between the high and low-water mark is not absolute and unqualified, but is limited by the right of the state to improve for public use without compensation, he unquestionably has the right of "access to the navigable part of the river from the front of his lot, the right to make a landing, wharf or pier for his own use or for the use of the public, subject to such general rules and regulations as the legislature may see proper to impose for the protection of the rights of the public, whatever those may be." Yates v. Milwaukee, 10 Wall. 497, 504, 19 L. Ed. 984. See, also, Philadelphia v. Commonwealth, 284 Pa. 225, 130 A. 491, and many other cases. This right of access, of course, is a right of access for the purpose of navigation or to use the stream as navigable water, and it necessarily includes the right to dredge and prepare the bed of the stream for that purpose so long as the improvement does not burden or interfere with the paramount public right.

[7] It is universally held that the riparian right of access to the navigable part of the river is property. "This riparian right is property, and is valuable, and, though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired. It is a right of which, when once vested, the owner can only be deprived in accordance with established law, and if necessary that it be taken for the public good, upon due compensation." Yates v. Milwaukee, supra. See, also, United States v. River Rouge Improvement Co., 269 U. S. 411, 418, 419, 46 S. Ct. 144, 147, 70 L. Ed. 339.

■ The city, of course, had the right to construct the mud fence where it did in front of defendant's land without making compensation for any direct injury which it may have inflicted by so doing. And, had it entirely destroyed the defendant's right of access, it still would not be liable to make compensation, provided its operation had some positive relation to the public right involved and was not an arbitrary exercise of power having "no real or substantial relation to the control of navigation or appropriateness to that end." United States v. River Rouge Improvement Co., supra.

■ These are the principles of the common law which clearly define the respective rights of the state and the riparian owner in the shores of navigable streams. But when it comes to assessing the cost of the improvement against the riparian owner, new considerations arise. Here the power of the state is definitely curbed in another direction by its Constitution. An individual property owner may not be assessed the cost of improvements which are for the general public benefit. Hammett v. Philadelphia, 65 Pa. 146, 3 Am. Rep. 615. This limitation may impinge upon the common-law rights of the public, but if it does, the latter must give way, because the state may, of course, modify or curtail its sovereign rights to any extent that it chooses. It follows that if the Legislature, under the guise or appearance of exercising the right of the public in navigable waters or exerting control over navigation, in effect levies an assessment for a public improvement against a property owner, its act would be unconstitutional.

The statute in question was undoubtedly drawn with the constitutional restriction in mind. The general improvement is recognized as a public benefit and no direct attempt is made to assess the cost of it upon the property owners. Their liability was made to depend entirely upon their own voluntary act in making use of it. It was of a quasi contractual character, and indeed this suit ultimately sounds in contract.

But it will be seen that if the riparian owner attempts to exercise his right of free access to navigable water (which includes the dredging or preparation of the channel), the statute, if construed as the city contends it should be, immediately binds him to pay for the very structure which impaired it. It is one thing to say that the owner's right of free access to the navigable portion of the river may be taken or destroyed

for the improvement of navigation. It is quite another thing to say that the Legislature may so circumscribe him that he cannot exercise it without subjecting himself to a liability to pay the cost of a public improvement upon the theory that it is a voluntary assumption on his part of a quasi contractual obligation. This would simply be doing by indirection what Hammett v. Philadelphia forbids to be done directly. It follows that the plaintiff's interpretation of the act would make it unconstitutional.

All of the foregoing considerations lead me to the conclusion that the act must be so construed so as not to include in "other wharf purposes," whatever use the defendant may be making of the protection afforded by the mud fence in connection with his ship basins.