**FEDERAL HOME LOAN BANK BOARD**

v.

**GREATER DELAWARE VALLEY FED-
ERAL SAVINGS AND LOAN ASSOCI-
ATION** (John S. Rice, Secretary of the
Commonwealth, and Robert L. Myers,
Jr., Secretary of Banking of the Com-
monwealth of Pennsylvania, Interve-
nors).

No. 25844.

United States District Court
E. D. Pennsylvania.

Aug. 20, 1959.

Ray E. Dougherty, Mose Silverman, Albion W. Fenderson, Federal Home Loan Bank Board, Washington, D. C., Thomas H. Creighton, Jr., Gen. Counsel, Federal Home Loan Bank Board, Washington, D. C., of counsel, for plaintiff.

Fred L. Rosenbloom, Edward W. Mullinix, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., J. Robert Twombly, Guy G. DeFuria, DeFuria, Larkin & DeFuria, Chester, Pa., for defendant.

Marshall J. Seidman, Deputy Atty. Gen., Anne X. Alpern, Atty. Gen., for intervenors.

EGAN, District Judge.

The Federal Home Loan Bank Board (sometimes herein referred to as the Board) alleging, among other things, that its prior consent had not been obtained, filed this action against defendant seeking a declaratory judgment to the effect that the defendant's conversion from a Federal charter to a State charter was ineffective and is void.

The Secretary of Banking and the Secretary of the Commonwealth of Pennsylvania, represented by the Attorney General of Pennsylvania, have been permitted to intervene and they support the defendant's position that Board approval is not required and that defendant is now properly doing business under a State charter as a savings and loan association.

The defendant and the intervenors filed separate motions to dismiss, or in the alternative, for summary judgment. The plaintiff also moves for summary judgment.

The relevant facts appear in the amended complaint and affidavits of Guy G. DeFuria and David G. Welsh, submitted in support of defendant's motion, in affidavits of Harry W. Caulsen, Raymond J. Strecker and Ray E. Dougherty, submitted in support of plaintiff's motion, in an affidavit by Secretary of Banking, Robert L. Myers, Jr., submitted in support of intervenors' motion, and in the record in Greater Delaware Valley Federal Savings and Loan Ass'n v. Federal Home Loan Bank Board, D.C., 163 F. Supp. 176. All parties agree that there is no substantial dispute as to the facts.

Essentially this case involves the construction of Section 5(i) of the Home Owners' Loan Act of 1933, 48 Stat. 132 (1933) as amended, 62 Stat. 1239 (1948), 12 U.S.C.A. § 1464(i) [hereinafter referred to as Section 5(i)] which permits the conversion of a Federal savings and loan association to a State chartered institution upon compliance with certain provisions therein set forth. A copy of Section 5(i) is set forth in the margin.[1]

The defendant, Greater Delaware Valley Federal Savings and Loan Association, (sometimes referred to as Associa-

1. "Any member of a Federal Home Loan Bank may convert itself into a Federal savings and loan association under this chapter upon a vote of 51 per centum or more of the votes cast at a legal meeting called to consider such action; but such conversion shall be subject to such rules and regulations as the Board may prescribe, and thereafter the converted association shall be entitled to all the benefits of this section and shall be subject to examination and regulation to the same extent as other associations incorporated pursuant to this chapter.

"Any Federal savings and loan association may convert itself into a savings and loan type of institution organized pursuant to the laws of the State, District, or Territory (hereinafter referred to in this section as the State) in which the principal office of such Federal association is located: *Provided*, (1) That the State permits the conversion of any savings and loan type of institution of such State into a Federal savings and loan association; (2) that such conversion of a Federal savings and loan association into such a State institution is determined upon the vote in favor of such conversion cast in person or by proxy at a special meeting of members called to consider such action, specified by the law of the State in which the home office of the Federal association is located, as required by such law for a State-chartered institution to convert itself into a Federal association, but in no event upon a vote of less than 51 per centum of all the votes cast at such meeting, and upon compliance with other requirements reciprocally equivalent to the requirements of such State law for the conversion of a State-chartered institution into a Federal association; (3) that notice of the meeting to vote on conversion shall be given as herein provided and no other notice thereof shall be necessary; the notice shall expressly state that such meeting is called to vote thereon, as well as the time and place thereof, and such notice shall be mailed, postage prepaid, at least twenty and not more than thirty days prior to the date of the meeting, to each member of record of the Federal association at his last address as shown on the books of the Federal as-

sociation and to the General Manager of the Federal Savings and Loan Insurance Corporation, Washington, District of Columbia; (4) that, upon the effective date of the conversion, the association has repurchased the total amount invested in its shares by the Secretary of the Treasury; and (5) that if, upon the effective date of conversion, the Home Owners' Loan Corporation will hold of record shares of the association, *its approval of the conversion has been obtained*; (6) that, in the event of dissolution after conversion, the members or shareholders of the association will share on a mutual basis in the assets of the association in exact proportion to their relative share or account credits; (7) that such conversion shall be effective upon the date that all the provisions of this chapter shall have been fully complied with and upon the issuance of a new charter by the State wherein the association is located; it being provided that its act of converting into a State-chartered institution shall constitute an agreement to be bound by all the requirements that the Federal Savings and Loan Insurance Corporation may legally impose under section 1726 of this title, and the association shall upon conversion and thereafter be authorized to issue securities in any form currently approved at the time of issue by the Federal Savings and Loan Insurance Corporation for issuance by similar insured institutions in such State, District, or Territory.

"In addition to the foregoing provision for conversion upon a vote of the members only any association chartered as a Federal savings and loan association, including any having outstanding shares held by the Secretary of the Treasury or Home Owners' Loan Corporation, may convert itself into a State institution upon an equitable basis, subject to approval, by regulations or otherwise, by the Federal Home Loan Bank Board and by the Federal Savings and Loan Insurance Corporation: *Provided*, That if the insurance of accounts is terminated in connection with such conversion, the notice and other action shall be taken as provided by law and regulations for the termination of insurance of accounts."

tion), pursuant to the provisions of the Home Owners' Loan Act of 1933, was chartered in 1938 by the Federal Home Loan Bank Board. Defendant's home office is at 69th and Walnut Streets, Upper Darby, Pennsylvania. Having decided to convert to a Pennsylvania charter, it complied with the provisions of Section 5(i) relating to such conversion and also with the provisions of the Pennsylvania Building and Loan Code relating to such conversion as contained in 15 P.S. § 1074–1001, etc., and received a State charter on January 2, 1959.

As stated above, the Board in this action seeks a declaratory judgment that the conversion of the defendant from a Federal to a State charter was ineffective and void because Section 5(i) of the Home Owners' Loan Act requires the approval of the Board and the defendant neither sought nor obtained such approval.

Section 5(i) consists of three unnumbered paragraphs, each covering a different situation. The first paragraph permits the conversion of any member of a Federal Home Loan bank into a Federal savings and loan association, "subject to such rules and regulations as the Board may prescribe."

The third paragraph permits the conversion of any Federal savings and loan association into a State institution upon an "equitable basis." Such a conversion, however, is expressly made "subject to approval, by regulations or otherwise, by the Federal Home Loan Bank Board and by the Federal Savings and Loan Insurance Corporation:" These two types of conversion under paragraphs 1 and 3 obviously require Board approval. Congress did not set forth in these two paragraphs the requirements which the association in question must fulfill in order that such a conversion may be permitted except that it specified in paragraph 1 that that type of conversion must at least be upon a vote of 51% or more of the votes cast at a legal meeting called to consider such action. All other requirements for such conversions under both paragraphs 1 and 3 of Section

5(i) were left to the discretion of the Federal Home Loan Bank Board which was given the power to make rules and regulations on the subject.

However, in the case of a conversion of a Federal savings and loan association to a State charter, under paragraph 2 of Section 5(i), (which is referred to in paragraph 3 of Section 5(i) as a conversion "upon a vote of the members only"), Congress set forth in detail the conditions with which the association must comply in order that such a conversion may be effective.

By the express provisions of the Act, no such conversion is permitted except in a State which permits the conversion of a savings and loan type of State institution into a Federal savings and loan association. It specifies the kind of notice to the stockholders and the necessary vote and requires a special meeting to consider and approve such conversion. As an additional condition, it requires that upon the effective date of the conversion the association has repurchased the total amount invested in its shares by the Secretary of the Treasury, and if upon the effective date of conversion the Home Owners' Loan Corporation holds shares of the association, its approval of the conversion has to be obtained. The conversion is to be upon a mutual basis so that in the event of dissolution, the shareholders will share in the assets of the association in exact proportion of their relative share or account credits, that the conversion shall be effective upon the date that all the provisions of the Act have been complied with, and upon the issuance of a new charter by the State wherein the association is located, and that in that event, the insurance of the shares by the Federal Savings and Loan Insurance Corporation shall continue.

Congress did not, in paragraph 2, make the conversion subject to such rules and regulations as the Board may prescribe. Instead, Congress spelled out the conditions which must be met for a paragraph 2 conversion from a Federal to a State charter. Nor did Congress expressly

state that such paragraph 2 conversions shall be subject to approval of the Board, although it gave the Home Owners' Loan Corporation the power of approval if it owned shares of the association. Had Congress intended to give the Board the power of approval, it could have easily said so. It would not have left such an important matter to construction or inference. It gave it such power in a paragraph 3 conversion and also gave the Home Owners' Loan Corporation a power of approval of a paragraph 2 conversion where it held shares of the association. The omission to give the Board power of approval of a paragraph 2 conversion must, therefore, have been intentional. The doctrine of *expressio unius est exclusio alterius* compels the conclusion that Congress did not intend that the Board should have approval power in a paragraph 2 conversion.

█ The Board concedes that it does not have the power of approval of a conversion from a Federal to a State charter in all cases. It claims, however, that a Federal savings and loan association cannot convert to a Pennsylvania chartered building and loan association without the approval of the Federal Home Loan Bank Board because under the law of Pennsylvania, the conversion of a State charter to a Federal charter re-

quires the approval of the Pennsylvania Department of Banking, 15 P.S., Corporations, Article X, § 1074–1001, etc.[2] It points to the second proviso of paragraph 2 of Section 5(i) and specifically to the words "and upon compliance with other requirements reciprocally equivalent to the requirements of such State law for the conversion of a State-chartered institution into a·Federal association" as compelling the conclusion that since Pennsylvania law requires the approval of the State Banking Department of a State to Federal conversion, its reciprocally equivalent administrative counterpart in the Federal Government, namely, the Board, must likewise approve a Federal to State conversion.

Not every State has a Banking Department. Consequently the argument of the Board has force only in the few States where there is a Banking Department. The Pennsylvania Department of Banking, inter alia, has supervision over all banks and building and loan associations chartered in that State and even over national banks which have power to carry on a fiduciary business: 71 P.S. § 422. It is empowered by law to enforce and administer the laws of Pennsylvania in relation to all corporations and persons under its jurisdiction, "and shall see that the greatest possible safety is af-

2. "A. Any two or more associations may, in the manner hereinafter provided in this act, be merged into one of such associations, hereinafter designated as the surviving association, or consolidated into a new association to be formed under this act.

"B. One or more associations, and one or more Federal savings and loan associations, operating under the laws of the United States, may, in the manner hereinafter provided in this act and pursuant to the laws of the United States, be merged into an association hereinafter designated as the surviving association, or into a Federal savings and loan association, or consolidated into a new association to be formed under this act, or into a new Federal savings and loan association, and an association may, in the manner hereinafter provided in this act and pursuant to the laws of the United States, be converted into a Federal savings and loan association, and any Federal savings and loan associa-

tion may, in the manner hereinafter provided in this act and pursuant to the laws of the United States, be converted into an association hereinafter designated as the converted association. No conversion of an association into a Federal savings and loan association, or merger or consolidation of one or more associations with one or more Federal savings and loan associations to form a Federal savings and loan association shall be effected pursuant to this subsection, unless at the time of such merger, consolidation or conversion, the laws of the United States shall authorize a Federal savings and loan association to merge into, consolidate with, or convert into an association with all the property and rights of such Federal savings and loan association, vesting in such association in the same manner as is prescribed by this act in the merger, consolidation or conversion of Federal savings and loan associations into building and loan associations."

forded to depositors therein or therewith, and to other interested persons." Act of April 9, 1929, P.L. 177, Art. XVI, § 1603, 71 P.S. § 423. Its approval of a State to Federal conversion is by law limited to a determination as to whether Pennsylvania law has been complied with.

As stated in the affidavit of Robert L. Myers, Jr. and the brief of the Commonwealth of Pennsylvania filed in this case, the Secretary of Banking of Pennsylvania has never asserted the right to approve or disapprove the conversion of a State chartered association into a Federal chartered association, except as to the regularity of the proceedings. Such approval is purely ministerial in character and is intended for the protection of shareholders and other persons interested. We should assume that the approval of the plaintiff Board is likewise sought for the purpose of protecting shareholders and other interested persons. But we hesitate to conclude that Congress intended to afford such protection only in States which have a Banking Department and would withhold such protection where there is no Banking Department or comparable State agency requiring approval of a State to Federal conversion The argument of the Board that this provision affords a "two way street" is not convincing because Congress, in the first proviso of paragraph 2 of Section 5(i), already provided for the "two way street" by limiting Federal to State conversions to those States which permit a State to Federal conversion.

Furthermore, Pennsylvania law relating to conversions from State to Federal charters requires also the approval of the Department of State, 15 P.S. § 1074–1005, and in the event of a refusal to approve such conversion by the Pennsylvania Department of Banking, there is a provision for appeal to the Governor of Pennsyvlania whose decision is final; 15 P.S. § 1074–1006, subd. C. To adopt the construction which the Board urges upon us would require us to find an agency in the Federal Government whose counterpart is the Department of State of the Commonwealth of Pennsylvania and we would also probably have to find some individual in the Federal Government to whom an appeal could be made from a refusal by the Board and whose decision in such matter would be final. We do not think such a conclusion is warranted by the language which Congress used in paragraph 2 of Section 5(i).

█ In enacting that paragraph by the amendment of 1948, Congress intended to give the members of the association alone the right to determine whether they wished to convert to a State charter. It is a conversion upon a mutual basis where the rights of the members remain the same after the conversion. In paragraph 3, Congress itself referred to a paragraph 2 conversion as a conversion "upon a vote of the members only," clearly implying that it did not require Board approval, whereas the other two types of conversions did.

Furthermore, Congress spelled out the conditions for such a conversion. In proviso 2 it called for a special meeting for that particular purpose, provided that voting shall be in person or by proxy and that the affirmative vote of not less than 51% of all the votes cast at such meeting shall be required for approval. In proviso 3 it laid down the conditions as to notice of the meeting, as to how and when it is to be given, and to whom. When Congress, in proviso 2, added the clause "and upon compliance with other requirements reciprocally equivalent to the requirements of such State law for the conversion of a State-chartered institution into a Federal association * * *", it was clearly dealing with action of the members. Congress was speaking of *corporate* action, not *State* approval. The doctrine of *ejusdem generis* [3] compels the conclusion that the phrase "other requirements" used in this

---

**3.** See City of Philadelphia v. Standard Oil Co. of Pa., D.C., 12 F.Supp. 647, affirmed 3 Cir., 79 F.2d 764, certiorari denied 297 U.S. 705, 56 S.Ct. 443, 80 L.Ed. 992; Hodgson v. Mountain & Gulf Oil Co.,

D.C., 297 F. 269, affirmed 10 Cir., 20 F. 2d 1022; Clarke v. Gold Dust Corp., 3 Cir., 106 F.2d 598; In re Bush Terminal Co., 2 Cir., 93 F.2d 659.

proviso relates to the same class or kind of requirements as therein discussed by Congress, namely, "corporate action" by the members of the association which may be necessary to convert, specified in the State law for the conversion of a State chartered institution into a Federal association. It does not include State approval of the action of the members of the association which necessarily follows and does not precede the action of the members of the association. We do not think that Congress, in such an important matter, would have left the question of the necessity of Board approval to inference, to Court construction, or to the accident as to whether or not the particular State in question has a Banking Department whose approval is required by State law.

Since Pennsylvania approval under the law relating to State to Federal conversions is purely ministerial, the Board's approval of a Federal to State conversion would seem to be similarly limited to a determination as to whether there has been compliance with the law relating to conversion. Such right would be at most a useless gesture in this particular case because admittedly the defendant has complied.

■ The Board's insistence, however, upon its right of approval indicates that what it is really seeking is a discretionary power to give or withhold its consent in all cases of Federal to State conversion. Since it has failed to adopt or promulgate rules and regulations on this subject, were we of the opinion that it had the power of approval, we would be inclined to decide that it cannot assert this power in this particular case because of its failure to publish rules and regulations on the subject as required by Section 3(a) of the Administrative Procedure Act, 60 Stat. 238 (1946), 5 U.S. C.A. § 1002(a) (1952); Pinkus v. Reilly, D.C.D.N.J.1957, 157 F.Supp. 548, 551, and opinion of Judge Kraft, of this district in Low v. Thomas, D.C.1958, 163 F.Supp. 945, 946, and cases there cited.

■ The Board also asks us to declare that the proxies obtained by the defend-ant in connection with the meeting to convert were improper in that they failed to disclose to the members from whom the proxies were solicited that the plaintiff Board was then conducting hearings against the defendant, under the provisions of Section 5(d) of the Home Owners' Loan Act looking to the appointment of a conservator. It does not point to any provision of the Act requiring such disclosure. However, it urges us, by analogy, to apply the underlying philosophy of Section 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78n(a), and the rules and regulations of the Securities and Exchange Commission promulgated thereunder, prohibiting solicitation of a proxy by communication which "omits to state any material fact necessary in order to make the statements therein not false or misleading." The difficulty with the plaintiff's position is that the Securities and Exchange Act of 1934 imposes certain restrictions upon the solicitation of proxies, consents, or authorizations by stockholders in respect of certain securities, 15 U.S.C.A. § 78n, 4 F.C.A. Title 15, § 78n, Annotation, 85 L.Ed. 547. There is no such provision in the Act before us. In the absence of a statutory provision or a controlling Federal or State decision, we cannot conclude that the failure of the defendant to disclose the pendency of the hearings in connection with its proxy solicitation rendered the present conversion null and void.

■ Finally the Board urges upon us that public policy denies the right to convert without approval of the Board in this particular case because of the pendency of hearings under Section 5(d). It is a sufficient answer to this contention that Congress did not indicate that the provisions of the second paragraph of Section 5(i) and the right of the defendant to convert thereunder should be suspended during the pendency of such hearings. The Courts may not supply this omission, however appealing it may seem to be. That would amount to judicial legislation. Congress has set forth in great detail the requirements for a Fed-

eral association to convert to a State charter. Congress has omitted any specific provision relating to the suspension of conversion during the pendency of such hearings and there is nothing in the language of paragraph 2 of Section 5(i) from which such suspension can be implied.

Plaintiff was advised by defendant association of its intention to convert and was advised from time to time as to the proceedings which it was conducting to do so. If plaintiff were of the opinion that defendant could not convert while Section 5(d) proceedings were pending against it, or that its proxy solicitation was materially false, it could and should have taken proceedings to restrain it and not wait, as it did, until the State of Pennsylvania issued a new charter to the association and the conversion became an accomplished fact. This is particularly true since the Secretary of Banking went to Washington and met with the Board and went over the entire situation well in advance of the conversion.

The practices of the management of the defendant corporation, which the plaintiff Board considered unsound practices, were known to the Board for some time because at least as early as the middle of 1958, it insisted that the defendant association merge with another association, and that the management of defendant association resign because of these allegedly unsound practices. It is difficult to understand why, with knowledge of these facts and its ability to conduct hearings, the plaintiff Board did not proceed promptly to appoint a conservator, receiver or indeed a representative, as the law provides. Its failure to do so indicates that it was not quite certain of its ground. Its failure to take prompt steps to restrain the conversion likewise indicates that its present contentions in that regard are but a makeweight to bolster its case.

The conversion of the defendant to a State chartered association continues the insurance of its shares by the Federal Savings and Loan Insurance Corporation. Plaintiff Board has the responsibility of providing for the examination not only of Federal savings and loan associations, but also all State chartered institutions whose accounts are insured through the Federal Savings and Loan Insurance Corporation, and under the provisions of the Home Owners' Loan Act of 1933, 12 U.S. C.A. § 1730, etc., it has the power, if it concludes that the association is in a shaky financial condition, or is engaged in unsound practices, to take the necessary steps to terminate the insured status of the defendant.

The legislative history of the statutory provisions in question supports the conclusions we have reached. It is contained in the hearings before the Committee on Banking and Currency, House of Representatives, 80th Congress, 1st Session, on H.R. 2798 (hereinafter referred to as Hearings).

Prior to July 3, 1948, the Home Owners' Loan Act contained no provision authorizing conversion of a Federal to a State association, although there had been a regulation of the Board which attempted to provide for such conversion. However, when it came to the attention of the Board that some Federal associations were planning to resume their State charters using the vehicle of the provisions contained in these regulations, the latter were repealed by the Board, or their predecessors in office, without any hearing and without any notice to anyone. Hearings, p. 7. Thereafter there was no provision in the law for a Federal to State conversion.

The original Bill H.R. 2798 was sponsored by the United States Savings and Loan League and one of its members, a Mr. Bodfish, explained to the Congressional Committee (Hearings, p. 8) that the purpose of the Bill was to permit a Federal to State conversion "without coming down here and getting permission from the Federal authorities to get out from their jurisdiction, *which in the main, will not be given.*" (Emphasis supplied.) It is for that reason that the Bill as originally drafted provided that if the Secretary of the Treasury or the Home Owners' Loan Corporation does

not own shares of the converting Federal association "no approval of such conversion by the Federal Home Loan Bank Board, or the Federal Home Loan Bank Administration shall be required. * * * " It is significant that the Bill adopted by Congress omitted the requirement for Federal Home Loan Bank approval, even in a case where the Home Owners' Loan Corporation owns stock of the converting association. Instead, Congress inserted a provision that the converting association must repurchase the total amount invested in its shares by the Secretary of the Treasury, and if upon the effective date of conversion the Home Owners' Loan Corporation still holds of record shares of the association, its approval of the conversion has been obtained. The final Bill, therefore, eliminated the approval by plaintiff Board in all cases of Federal to State conversions.

Parenthetically, it should be noted that the proponents of the Bill agreed that if a Federal chartered association converts to a stock type of company, which is possible in Ohio and California, and one other State, the permission of the Federal authorities—that is, approval of the Board—is necessary, as provided in paragraph 3 of Section 5(i) relating to a conversion upon an equitable basis. But all the proponents of the Bill insisted that in the case of a conversion from a Federal to a State charter upon a mutual basis, no approval of the Board should be required. Hearings, pp. 7, 8, 43, 81.

Mr. Fahey, at that time Chairman of plaintiff Board, appeared before the Committee and strongly insisted that the Bill as drawn was defective in that it did not require Board approval or approval of the Federal Savings and Loan Insurance Corporation, which corporation is controlled and operated by plaintiff Board. Congress apparently did not agree with him and did not require such approval, though other changes which he suggested be incorporated in the Bill were made. Thus he suggested that the Bill provide for a "two way street" and to authorize Federal to State conversions only where the law of the State authorizes its savings and loan associations, or similar institutions, to convert to Federal charter. His suggestion was embodied in proviso 1 of the second paragraph of Section 5(i). He also suggested that the vote for the conversion be held at a special meeting instead of at a legal meeting, which suggestion was likewise adopted by Congress which also adopted his suggestions with reference to the notice of the meeting. Mr. Fahey also insisted that in order to approve a conversion, Congress should require in favor of it a vote of 51% of the members entitled to vote, instead of 51% of all the votes cast at the meeting. This would have made it more difficult for a Federal association to convert to a State charter. Congress did not adopt this suggestion. It is significant that two of the suggestions of Mr. Fahey, namely, the required majority vote of shareholders and Board approval, which would have hampered and retarded Federal to State conversions, were not adopted by Congress, although it did at the same time adopt other of his suggestions. The omission of Board approval was intentional on the part of Congress and we do not think that the Act should be construed as requiring Board approval in any case coming within its provisions.

Mr. Fahey, as Chairman of the Board, presented to the Congressional Committee considering this legislation a theoretical case practically on all fours with the case at bar as a reason for adopting regulations requiring Board approval. He made the following statement (Hearings, p. 58):

"Fifth. In my judgment the bill does not include necessary protection for the interests of the Federal Savings and Loan Insurance Corporation. Under the bill, it would be possible in a jurisdiction which had no State supervisory law, or a weak supervisory law, for a Federal association which had gotten into a shaky financial condition through excessive lending or other unsound practices, and which had been requested by the Federal Home Loan

Bank Administration to correct these practices, to convert to a State charter. It would thus free itself from the necessity of complying with any supervisory recommendations designed to remedy the situation and maintain the association's soundness. At the same time the Federal Savings and Loan Insurance Corporation would have no option but to continue the insurance under these radically different conditions. I would strongly recommend, therefore, that the bill be amended so as to remove the possibility of developments of this character."

The factual situation in this case was therefore one of the possible developments which Mr. Fahey urged upon Congress to provide for by an amendment to the Bill. Congress apparently weighed its purpose of providing for the free conversion from a Federal to State charter against the possible attempt in some particular case of escaping Federal jurisdiction and decided in favor of the free conversion, without interference by the Federal Home Loan Bank Board. Nor did it provide for suspension of the right to convert during the pendency of hearings before the Board. We think our conclusion in this case follows the policy of Congress, as expressed in paragraph 2 of Section 5(i) of the Act.

Thus Congress deliberately refrained from giving the Board a power of approval of Federal to State conversion. "We cannot supply what Congress has studiously omitted." F. T. C. v. Simplicity Pattern Co., 360 U.S. 55, 67, 79 S.Ct. 1005, 1012, 3 L.Ed.2d 1079.

For the reasons given above, we must conclude that this Court has jurisdiction of the subject matter and of the parties to this controversy; that the defendant ceased to exist as a Federal savings and loan association on January 2, 1959, at which time it converted to a State charter; that its conversion on January 2, 1959 to a State charter under the name of Greater Delaware Valley Savings and Loan Association was legal and proper;

and that the actions of the Secretary of Banking and of the Secretary of the Commonwealth of Pennsylvania in causing a Certificate of Conversion to issue, were, in all respects, legal and proper.

Accordingly, plaintiff's motion for summary judgment will be denied; the separate motions to dismiss filed by defendant and the intervenors will be denied; and the separate motions for summary judgment filed by the defendant and the intervenors will be granted.