277 F.2d 437
 FEDERAL HOME LOAN BANK BOARD, Appellant
v.
GREATER DELAWARE VALLEY FEDERAL SAVINGS AND LOAN
ASSOCIATION; and John S. Rice, Secretary of the
Commonwealth, Robert L. Myers, Jr., Secretary of Banking of
the Commonwealth of Pennsylvania, Intervening Defendants.
 No. 13028.
 United States Court of Appeals Third Circuit.
 Argued Feb. 4, 1960.
Decided April 12, 1960.
 
 Ray E. Dougherty, Washington, D.C. (Mose Silverman, Albion W. Fenderson, Washington, D.C., on the brief), Thomas H. Creighton, Jr., General Counsel, Federal Home Loan Bank Board, Washington, D.C., for appellant.
 Edward W. Mullinix, Philadelphia, Pa. (Fred L. Rosenbloom, Philadelphia, Pa., Guy G. deFuria, Chester, Pa., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., deFuria, Larkin & deFuria, Chester, Pa., (on the brief), for appellee.
 Anne X. Alpern, Atty. Gen. (Frederic G. Antoun, Deputy Atty. Gen., on the brief), for intervening defendants.
 Before GOODRICH, HASTIE and FORMAN, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 In this case the Federal Home Loan Bank Board has sought a declaratory judgment that an attempt statutory conversion of Greater Delaware Valley Federal Savings and Loan Association from its original status as a federally chartered institution to that of a banking institution chartered by Pennsylvania has been legally ineffective. Officers representing the Commonwealth of Pennsylvania have intervened in opposition to the petition of the Board. On motion of the defendant and the intervenors, the court below found that the Association had lawfully and effectively become a state chartered institution and entered judgment accordingly. D.C., 176 F.Supp. 24.
 
 
 2
 In 1938 the Federal Home Loan Bank Board granted Greater Delaware Valley Federal Savings and Loan Association a federal charter pursuant to the Home Owners' Loan Act, 48 Stat. 132, 12 U.S.C.A. 1464. In 1958 serious differences arose between the Board, which is charged by law with supervision of the local savings and loan associations which it has chartered, and the officers and directors of the defendant Association concerning the manner in which the Association had been managed and operated. As a result of recommendations of its representative who had inquired into the affairs of the Association, the Board proposed to take over direct control and management of the affairs of the Association through its own supervisory representative. resentative. The Association obtained an injunction against such intervention, but on appeal this court found the proposed action of the Board not to be subject to judicial interdiction, regardless of the merits of the controversy. Greater Delaware Valley Federal Savings and Loan Association v. Federal Home Loan Bank Board, 3 Cir., 1958, 262 F.2d 371. In the meantime, the Board made the charges of mismanagement the subject of an administrative proceeding with a view to the appointment of a conservator for the Association.
 
 
 3
 During the course of the above outlined efforts of the Board, the directors of the Association approved a plan for its conversion into a state chartered institution. The shareholders of the Association were notified of a special meeting to vote on the plan and proxies were solicited for use at that meeting. Neither the notice nor the proxy solicitation said anything about the existing controversy between the Board and the management of the Association. By means of proxies thus obtained the proponents of conversion were able to poll a large majority vote at the special meeting in favor of the recommended conversion. Articles of conversion were then duly filed with the Department of State of the Commonwealth of Pennsylvania. Thereafter the state Department of Banking approved the conversion and issued a formal certificate of conversion.
 
 
 4
 This formal conversion was completed while the Board's administrative proceedings were pending and before they could eventuate in any supersession of management by representatives of the Board. Since this conversion the Association has claimed to be and has operated as a state agency. It has denied that it is any longer a federal agency and has refused to recognize any continuing authority of the Board over its activities. In these circumstances the Board filed the present action for an authoritative ruling on the legal status of the Association.
 
 
 5
 Unquestionably the United States, which incorporated Greater Delaware Valley Federal Savings and Loan Association, had exclusive authority to determine whether and how that corporation could surrender its federal charter and terminate its status and obligations as a federal savings and loan association. Cf. Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Building Corp., 1937, 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147; Hopkins Federal Savings & Loan Ass'n v. Cleary, 1935, 296 U.S. 315, 56, S.Ct. 235, 80 L.Ed. 251. This Congress has undertaken to do in the very statute which provides for the chartering of federal savings and loan associations. Section 5(i) of the Home Owners' Loan Act, as amended, reads in part as follows:
 
 
 6
 'Any member of a Federal Home Loan Bank may convert itself into a Federal savings and loan association under this chapter upon a vote of 51 per centum or more of the votes cast at a legal meeting called to consider such action; but such conversion shall be subject to such rules and regulations as the Board may prescribe, and thereafter the converted association shall be entitled to all the benefits of this section and shall be subject to examination and regulation to the same extent as other associations incorporated pursuant to this chapter.
 
 
 7
 'Any Federal savings and loan association may convert itself into a savings and loan type of institution organized pursuant to the laws of the State, District, or Territory (hereinafter referred to in this section as the State) in which the principal office of such Federal association is located: Provided, (1) That the State permits the conversion of any savings and loan type of institution of such State into a Federal savings and loan association; (2) that such conversion of a Federal savings and loan association into such a State institution is determined upon the vote in favor of such conversion cast in person or by proxy at a special meeting of members called to consider such action, specified by the law of the State in which the home office of the Federal association is located, as required by such law for a State-chartered institution to convert itself into a Federal association, but in no event upon a vote of less than 51 per centum of all the votes cast at such meeting, and upon compliance with other requirements reciprocally equivalent to the requirements of such State law for the conversion of a State-chartered institution into a Federal association;'
 
 
 8
 The first major contention of the Board is that under the above quoted statute a federal association cannot convert to the status of a Pennsylvania state agency without the approval of the Board. This conclusion is based upon the provision of Section 5(i) which in general terms imposes 'requirements reciprocally equivalent to the requirements of such State law for the conversion of a State-chartered institution into a Federal association'. Therefore, it posits a requirement of Pennsylvania law that approval by the state Department of Banking is prerequisite to conversion of a state association to federal status. However, the Attorney General of Pennsylvania argues forcibly that there is no such requirement of state law. We find it unnecessary to decide this question because we are unable to agree with the Board's basic interpretation of the reciprocating clause of Section 5(i). That subsection lists seven numbered requirements for conversion from a federal to a state charter. The reciprocating clause appears in requirement '(2)' which, in all other respects, relates to the manner of obtaining membership approval of a proposed conversion. Specific essentials of a proper and effective vote for conversion are stated, and their enumeration is followed by the phrase, 'and upon compliance with other requirements reciprocally equivalent to the requirements of such State law for the conversion of a State-chartered institution * * *.' Thus, an analysis of the subject matter of the clause suggests that the mandated compliance with additional state requirements is, like all other specifications of the subsection, concerned only with the way in which membership approval of conversion shall be determined.[1]
 
 
 9
 The meaning of Section 5(i) is further illuminated by the last paragraph of this subsection. That paragraph authorizes a second or alternative type of conversion, stipulating that 'in addition to the foregoing provision for conversion upon a vote of the members only any association chartered as a Federal savings and loan association, including any having outstanding shares held by the Secretary of the Treasury or Home Owners' Loan Corporation, may convert itself into a State institution upon an equitable basis, subject to approval, by regulations or otherwise, by the Federal Home Loan Bank Board and by the Federal Savings and Loan Insurance Corporation'. This explicit contrasting of 'conversion upon a vote of the members only' with conversion 'upon an equitable basis, subject to approval * * * by the Federal Home Loan Bank Board' is in itself a persuasive indication that Congress did not intend that Board approval proval be a requirement of 'conversion upon a vote of the members only'.
 
 
 10
 But quite apart from the reciprocating clause of Section 5(i), it is argued that the pendency of charges of mismanagement and an administrative proceeding aimed at superseding those in control of a federal savings and loan association preclude a conversion at that time from federal to state status without the consent of the Board. While it is arguable that such a prohibition is desirable, there is simply nothing in the statute, and not even a regulation of the Board, which declares or even suggests its existence. Moreover, as the court below pointed out, during the consideration of this legislation Congress was apprized of the likelihood that an association, displeased by the course of Board monition, would seek to escape federal supervision by acquiring a state charter. Expressing this fear, the then Chairman of the Board recommended that the bill be amended to enable the Board to prevent such conversion. Hearings Before the House Committee on Banking and Currency on H.R. 2798, 80th Cong. 1st Sess. 58 (1947). Moreover, during the committee consideration of the companion Senate bill, controversy between an association and the federal supervisory agency was suggested as a legitimate reason for desiring to convert to state auspices. Hearings Before Subcommittee of the Senate Committee on Banking and Currency on S. 913, 80th Cong. 1st Sess. v. 1 pp. 4, 80-81, (1947). This legislative history provides an affirmative reason for not recognizing a restriction which, even without this history, seems a gratuitous gloss on the statute.
 
 
 11
 We have not overlooked a separate point made by the Association that the failure of the Board to publish any procedure for obtaining its approval of a desired conversion is a failure to comply with Section 3(a) of the Administrative Procedure Act, 5 U.S.C.A. 1002(a), which relieves the Association of any obligation to obtain such approval. Cf. Columbia Research Corp. v. Schaffer, 2 Cir., 1958, 256 F.2d 677; Pinkus v. Reilly, D.C.N.J.1957, 157 F.Supp. 548. However, since we have concluded that Board approval is not required by the statute we do not reach this argument and express no opinion on it.
 
 
 12
 Finally, the Board urges that the conversion was invalid because proxies, essential to the achievement of a majority vote for conversion at the special meeting of the Association called to decide that question, were solicited without any accompanying statement advising shareholders of the charges made and the administrative steps taken by the Board against existing management. There is no question but that the shareholders were plainly told the purpose of the meeting. There is no claim that they were given any erroneous or misleading information. The objection is merely that they were not told in connection with the proxy solicitation why management proposed and favored conversion. This was left for whatever inquiry, explanation and discussion might occur at the meeting itself.
 
 
 13
 In neither the law of the United States nor the law of Pennsylvania, where the defendant Association is localized, do we find any statutory regulation concerning disclosure in the solicitation of proxies. The Board itself has not attempted to cover this matter by any regulation, and we find entirely unpersuasive a suggestion that requirements of an unrelated agency, the Securities and Exchange Commission, concerning disclosures in proxies within its field of responsibility, have any significance here. Actually, the Board is asking that the court, by applying general equitable principles to the circumstances of this case, shall find the majority vote of the shareholders for conversion to be voidable and set it aside. However, no shareholder has joined in this claim that the shareholders have been wronged by any unfair conduct. There is no evidence, not even an allegation, that any shareholder was in fact misled or in any way adversely affected by the failure of the proxy notice to contain the information the Board thinks it should have contained. Thus, the Board's position is not supported either by a showing of deception and injury in fact or by a showing that notice as given has failed to comply with any stated or formal requirement of law. We find no merit in it.
 
 
 14
 On the whole case we are satisfied that the conversion attempted by the Association has been lawfully accomplished and that the court below properly so decided.
 
 
 15
 The judgment will be affirmed.
 
 
 
 [1]
 As originally drafted, H.R. 2798, which later became 5(i), contained neither the 'reciprocally equivalent' clause nor the present proviso (1), authorizing a federal-to-state conversion only when state law permits the conversion of a state savings and loan institution to federal status. The Board points out that the bill was widely criticized for its failure to provide a 'two-way street' and argues that the 'reciprocally equivalent' clause was the means by which this omission was remedied. It would be equally reasonable, however, to conclude that the desire for a 'two-way street' was fully satisfied by the addition of proviso (1), an indeed there are indications in the legislative history of the bill which suggest that this was the case. See particularly the comments of Commissioner Fahey, Hearings Before the House Committee on Banking and Currency on H.R. 2798, 80th Cong., 1st Sess. 57 (1947)