336 F.2d 153
 Bernard REICH and Sylvia Reich, Depositors and members of
the Beverly Hills Federal Savings and Loan Association,
individually and in behalf of Beverly Hills Federal Savings
and Loan Association and the other members of said
association similarly situated, Appellants,
v.
Eugene WEBB, Jr., et al., Appellees.
 No. 18457.
 United States Court of Appeals Ninth Circuit.
 Aug. 18, 1964.
 
 Jack Corinblit, Vaughan, Brandlin, Robinson & Roemer, Los Angeles, Cal., for appellants.
 Glen R. Miller, Beverly Hills, Cal., Thomas N. Dowd, Robert B. Hankins, Washington, D.C., for appellee Beverly Hills Federal Savings & Loan Ass'n.
 Rodney K. Potter, O'Melveny & Myers, Los Angeles, Cal., for appellee Lytton Financial Corp.
 Rodney K. Potter, O'Melveny & Myers, Los Angeles, Cal., for appellees Bart Lytton, and others.
 Richard P. Byrne, Los Angeles, Cal., MacCracken, Collins & Hawes, Philip R. Collins, Washington, D.C., for appellee Federal Home Loan Bank Board.
 John P. Pollock, Max F. Deutz, Pollock & Deutz, Loa Angeles, Cal., for appellees Webb, Matthews and others.
 Before BARNES, MERRILL and KOELSCH, Circuit Judges.
 KOELSCH, Circuit Judge.
 
 
 1
 The narrow question before us on this appeal is whether the district court properly refused appellant's motion to intervene as a matter of right pursuant to Rule 24(a)(2) or (3), F.R.Civ.P. The answer depends upon whether the Federal Home Loan Bank Board has the power to enforce by court action common law fiduciary responsibilities of savings and loan association officers and directors. For reasons hereafter appearing, we conclude that the order of the district court was correct.
 
 
 2
 The facts are undisputed. Appellants are depositors and members of the Beverly Hills Federal Savings and Loan Association. By various court actions they have challenged the transfer of controlling interest in the Association from a combine headed by Eugene and Marguerite Webb (the Webb group) to one headed by Bart and Beth Lytton (the Lytton group). Appellants allege that the Webb group has personally profited in connection with the transfer of proxies, directorships and control of the Association to the Lytton group; their theory is that these personal profits derived from 'sale of office' and 'sale of control' and as such belong to the entire Association because of an alleged breach of fiduciary duty. They contend that they, as depositors and members of the Association, may assert the claim on its behalf in a derivative action.
 
 
 3
 The present dispute arose when the Federal Home Loan Bank Board (Bank Board), a body charged by Congress with the supervision and regulation of federal savings and loan associations, instituted administrative proceedings challenging the same transactions attacked by appellants. These proceedings were terminated when the Association filed a suit against the Bank Board, pursuant to 5(d)(1) of the Home Owners' Loan Act of 1933, as amended (12 U.S.C. 1464(d)(1)), to have the validity of the challenged transaction judicially determined and to obtain an injunction staying further Bank Board proceedings. The Association later amended its complaint, impleading members of the Webb and Lytton groups.
 
 
 4
 At this juncture, appellants moved to intervene in the action as parties plaintiff under Rule 24(a), F.R.Civ.P.[1] They urged that their interests as depositors in the Association would not be adequately represented by the Association because of alleged domination by the Lytton group. They further asserted that the Bank Board could not adequately represent them for the reason that it lacked power to enforce the fiduciary obligations of the Association directors and officers by court action. In either event they claimed they would or might be bound by the result. As an independent ground supporting intervention as a matter of right, appellants contended they might be adversely affected by a distribution or other disposition of property, subject to the control or disposition of the court. The Association, the Webb group, the Lytton group and the Bank Board all opposed the proposed intervention. Following a hearing, appellants' motion was denied but they were granted leave to file briefs as amicus curiae.
 
 
 5
 The district court rested its decision[2] on a determination that the Bank Board had power to adequately represent appellants. Alternative and independent bases for this power were found: (1) In Congressional authorization (12 U.S.C. 1464(d)(1) and (2)); (2) inherent in the Bank Board by virtue of the doctrine of Parens Patriae.
 
 
 6
 Appellants assert error and appeal. Jurisdiction to review an order denying intervention as a matter of right lies in this court. 28 U.S.C. 1291, 1294; Brotherhood of Railroad Trainmen v. Baltimore & Ohio Railroad Co., et al., 331 U.S. 519, 524, 67 S.Ct. 1387, 1389, 91 L.Ed. 1646 (1947).
 
 
 7
 Intervention under Rule 24(a)(2), F.R.Civ.P. depends upon a dual showing by the party seeking it that: (1) he is or may be inadequately represented and (2) that he would or might be bound by a judgment in the action. Farmland Irrigation Co. v. Dopplmaier, 220 F.2d 247, 248 (9th Cir. 1955). The Supreme Court,[3] as well as commentators,[4] have perceived the inherent dilemma confronting would-be intervenors in class suits under this branch of Rule 24. As applicable here it would mean that if, as appellants assert, the Bank Board lacks the power to represent them, then they would 'not be bound' by operation of the doctrine of res judicata. Sutphen, Inc. v. United States, 342 U.S. 19, 21, 72 S.Ct. 14, 16, 96 L.Ed. 19 (1951); Formulabs, Inc. v. Hartley Pen Co., 275 F.2d 52, 55 (9th Cir. 1960); if, on the other hand, the Bank Board possesses the necessary power, appellants may not intervene as a matter of right because they are 'adequately represented.' But we need not saddle appellants on the horns of this dilemma to refute their right to intervene. For we conclude that the Bank Board has power by virtue of 12 U.S.C. 1464(d)(1) to secure all relief sought by appellants,[5] and therefore they are 'adequately represented' so as to preclude intervention as a matter of right under Rule 24(a)(2), F.R.Civ.P.
 
 
 8
 The Federal Home Loan Bank Board is an administrative body created by Act of Congress. Its powers are broadly declared in several sections of the Act, one of which is 12 U.S.C. 1464(d)(1). So far as pertinent, that section provides:
 
 
 9
 'The Board shall have power to enforce this section and rules and regulations made hereunder. In the enforcement of any provision of this section or rules and regulations made hereunder, or any other law or regulation, and in the administration of conservatorships and receiverships as provided in paragraph (2) of this subsection, the Board is authorized to act in its own name and through its own attorneys.'
 
 
 10
 Authority to apply to the district court for the enforcement of these provisions is then conferred:
 
 
 11
 'Upon the giving of notice of alleged violation of law or regulation as herein provided, either the Board or the association affected may, within thirty days after the service of said notice, apply to the United States district court for the district where the association is located for a declaratory judgment and an injunction or other relief with respect to such controversy, and said court shall have jurisdiction to adjudicate the same as in other cases and to enforce its orders.'
 
 
 12
 Appellants first urge that 'the term 'or any other law or regulation' in the procedural provisions of 5(d)(1) (12 U.S.C. 1464(d)(1)) obviously must be construed in light of the doctrine of ejusdem generis.' They contend that:
 
 
 13
 'under this doctrine that term must necessarily refer to 'any other law or regulation' which Congress has expressly directed the Board to enforce and which covers the same subject matter as is contained in the statute and regulations of the Board. But (they note that) there is no contention that Congress has expressly directed the Board to enforce liability of directors for the breach of their fiduciary duties to members and the Board has not in 30 years of administering the Act ever adopted any regulations on that subject.'
 
 
 14
 They conclude '* * * this provision * * * is not relevant here.'
 
 
 15
 Appellants read too narrowly. In support of their contention that the doctrine of ejusdem generis limits the Bank Board's enforcement powers to those expressly covered by Congressional directives or Bank Board regulations, they cite Federal Home Loan Bank Board v. Greater Delaware Valley Federal Savings & Loan Association, 176 F.Supp. 24, 29 (D.C.E.D.Pa.1959). In that case the Bank Board sought a declaratory judgment voiding the conversion of a Federal Savings and Loan Association from a federal to a state charter until the approval of the Bank Board was obtained. No duty on the part of the Association to obtain Bank Board approval existed either at common law, by statute or by Bank Board regulations. In holding against the Bank Board in that case, the district court incorporated as part of its rationale an application of the doctrine of ejusdem generis in the manner suggested by appellants. In affirming, the Third Circuit concluded that '* * * Board approval is not required by the statute * * *' and expressly declined to affirm on the ground urged here by appellants, saying '* * * We do not reach this argument and express no opinion on it.' Federal Home Loan Bank Board v. Greater Delaware Valley Savings & Loan Association, 277 F.2d 437, 440 (3d Cir. 1960). Basically the holding stands for nothing more than a declaration that substantive liability cannot be created by the Bank Board apart from statute, a proposition with which we fully agree.
 
 
 16
 Here, however, are several considerations pointing to a broad construction of the Bank Board's power to secure legal redress under 12 U.S.C. 1464(d)(1). Absent is the necessity of a narrowing construction so as to sustain constitutionality. And in cases involving conflict between rules of construction, the courts will strive to adopt that construction which best effectuates the legislative purpose. Matheson v. Armbrust, 284 F.2d 670, 674 (9th Cir. 1960). As this court noted in Home Loan Bank Board v. Mallonee, 196 F.2d 336, 390 (9th Cir. 1952), 'The Home Owners' Loan Act of 1933, as amended, gives the Board a wide area of supervisory control over institutions like Association (Savings and Loan Associations) and its extensive powers in this field were given the strongest emphasis in Fahey v. Mallonee, supra, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947).' In discussing the extent of authority conferred on the Bank Board by Congress, the Fifth Circuit has observed that:
 
 
 17
 'when a governmental agency holds such great powers over its offspring, even to the point of appointing a conservator or receiver to replace the management, 12 U.S.C.A. Sec. 1464(d)(2), it is difficult to hold that an informal request, even demand, to clean house would amount to an abuse of the statutory powers and discretion of the agency.' Miami Beach Federal Savings & Loan Association v. Callander, 256 F.2d 410, 414-415 (5th Cir. 1958).
 
 
 18
 Construing the statute as a whole and in light of its purpose (Worcester Felt Pad Corp. v. Tucson Airport Authority, 233 F.2d 44, 48 (9th Cir. 1956) it is manifest that Congress envisioned a strong Bank Board with broad regulatory power to redeem and make viable the initial condition of charter issuance that 'primary consideration (be given) to the best practices of local mutual thrift and home-financing institutions in the United States,' California v. Coast Federal Savings & Loan Association, 98 F.Supp. 311, 316 (D.C.S.D.Calif.1951). We are mindful of the cardinal principle
 
 
 19
 '* * * that in construing a statute setting up an administrative agency and providing for judicial review of its action, court and agency are not to be regarded as wholly independent and unrelated instrumentalities of justice, each acting in the performance of its prescribed statutory duty without regard to the appropriate function of the other in securing the plainly indicated objects of the statute. Court and agency are the means adopted to attain the prescribed end, and so far as their duties are defined by the words of the statute, those words should be construed so as to attain that end through co-ordinated action. Neither body should repeat in this day the mistake made by the courts of law when equity was struggling for recognition as an ameliorating system of justice; neither can rightly be regarded by the other as an alien intruder, to be tolerated if must be, but never to be encouraged or aided by the other in the attainment of the common aim.' United States v. Morgan, 307 U.S. 183, 191, 59 S.Ct. 795, 799, 83 L.Ed. 1211 (1939). 'There is little scope for the ancient shibboleth that a statute in derogation of the common law must be strictly construed, or for placing an emphasis on their particulars which will defeat their obvious purpose. Legislatures create administrative agencies with the desire and expectation that they will perform efficiently the tasks committed to them. That, at least, is one of the contemplated social advantages to be weighed in resolving doubtful construction.' Stone, The Common Law in the United States, 50 Harv. L.Rev. 4, 19 (1936).
 
 
 20
 Accordingly, it has been held that administrative enforcement of a statute is not limited to the remedies expressly provided when the remedy chosen is within the contemplation of the enforcement powers granted by Congress. Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941). Likewise, when an administrative agency invokes the jurisdiction of the court to redress acts and practices made illegal, broad latitude in fashioning appropriate relief is permissible.
 
 
 21
 'When Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of statutory purposes. As this court long ago recognized, 'there is inherent in the Courts of Equity a jurisdiction to * * * give effect to the policy of the legislature." Mitchell v. DeMario Jewelry, 361 U.S. 288, 291-292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960).
 
 
 22
 Only a clear expression of legislative intent will limit an equity court's power in this regard. Porter v. Warner Holding Co., 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). We therefore conclude that, in view of the considerations above noted, the language in 12 U.S.C. 1464(d)(1) 'or any other law' includes common law fiduciary responsibilities which the Bank Board is empowered to enforce through appropriate court action. To hold otherwise would render the language 'or any other law' mere surplusage. As the Supreme Court said in construing a penal statute, where narrow construction is a requirement,
 
 
 23
 'The rule of ejusdem generis, while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty. Ordinarily, it limits general terms which follow specific ones to matters similar to those specified; but it may not be used to defeat the obvious purpose of legislation.' United States v. Alpers, 338 U.S. 680, 683, 70 S.Ct. 352, 354, 94 L.Ed. 457 (1950).
 
 
 24
 We are clear that a narrow and inhibited construction would be neither good policy nor good law. Compare Los Angeles Trust Deed & Mortgage Exchange v. Securities & Exchange Commission, 285 F.2d 162 (9th Cir. 1960). Our disposition on this ground makes it unnecessary to decide whether the sovereign power of parens patriae vests in a statutory agency and we therefore decline appellees' invitation to so determine.
 
 
 25
 As for appellants' contention that to allow the Bank Board to enforce common law fiduciary duties by court action would be to permit noncompliance with the Administrative Procedure Act, the short answer is that those duties do not fall within the publicity and notice requirements of the APA.[6] We believe the sense of those sections indicates they were not intended to apply to court enforcement of obligations imposed at common law, even though the court action is initiated by administrative agencies. Nothing in the legislative history suggests otherwise. See Administrative Procedure Act, Legislative History, Senate Document 248, 79th Cong.2d Sess., and material cited at pages 426-428 of the Index. Rather, it appears that the publicity and notice sections were designed to meet the very real need for public information on the detailed agency rules and regulations which, though authorized by statute, often impose technical requirements far beyond those existing at common law. See 1 Davis, Administrative Law 6.09 at p. 392-394. Here, on the other hand, there is no trap for the unwary; for the action is primarily judicial and involves long standing, clearly defined and well known duties. In these circumstances no injustice results, for one is 'presumed to know the law.'[7]
 
 
 26
 Appellants' alternative claim for intervention as a matter of right by virtue of Rule 24(a)(3), F.R.Civ.P. is also untenable. Inasmuch as the purpose underlying Rule 24(a)(3), is '* * * to prevent the multiplicity of suits where common questions of law or fact are involved' (Fusae Yamamoto v. Dulles, 16 F.R.D. 195, 198 (D.C.Hawaii 1959)) and giving particular cognizance to our conclusion that appellants are 'adequately represented' by a disinterested governmental agency, and the fact that appellants' interests are derivative, not primary, we conclude the circumstances of this case do not warrant intervention under that rule. See Kaufman v. Societe Internationale, 188 F.2d 1017 (D.C.Cir.1951); Rev'd on other grounds, 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853. Compare Pellegrino v. Nesbit, 203 F.2d 463 (9th Cir. 1953) where intervention under Rule 24(a) was granted a small shareholder when there were allegations that the suit was not being 'diligently prosecuted.' See also United States v. Loew's, Inc.,20 F.R.D. 423, 425 (D.C.S.D.N.Y.1957) and cases there cited.
 
 
 27
 The judgment is affirmed.
 
 
 
 [1]
 Insofar as relied upon by appellants, Rule 24 provides:
 '(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof. As amended Dec. 27, 1946, eff. March 19, 1948.'
 The appellants also moved below for permissive intervention under subdivision (b) of Rule 24, but no appeal has been taken from that part of the district court's order.
 
 
 [2]
 Beverly Hills Federal Savings and Loan Association v. Federal Home Loan Bank Board, 33 F.R.D. 292 (D.C.S.D.Calif.1962)
 
 
 [3]
 Sam Fox Publishing Co. v. United States, 366 U.S. 683, 691, 81 S.Ct. 1309, 1313, 6 L.Ed.2d 604 (1961)
 
 
 [4]
 Wright, Federal Courts 75 at 284; Note, Intervention of Right of Class Actions: The Dilemma of Federal Rule of Civil Procedure 24(a)(2) 50 Calif.L.Rev. 89 (1962); Anno. 84 A.L.R.2d 1412, 1433 (1962)
 
 
 [5]
 As the district court noted, Beverly Hills Federal Savings and Loan Association v. Federal Home Loan Bank Board, supra, 33 F.R.D. at 293, examination of the relief sought by the Bank Board and appellants reveals it to be substantially similar
 
 
 [6]
 5 U.S.C. 1002(a)(3) provides:
 '1002. Publication of information, rules, opinions, orders and public records
 '(a) Every agency shall separately state and currently publish in the Federal Register (3) substantive rules adopted as authorized by law and statements of general policy or interpretations formulated and adopted by the agency for the guidance of the public, but not rules addressed to and served upon named persons in accordance with law. No person shall in any manner be required to resort to organization or procedure not so published.'
 5 U.S.C. 1003(a)(3) provides:
 '1003. Rule making Notice; publication and contents
 '(a) General notice of proposed rule making shall be published in the Federal Register (unless all persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law) and shall include (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved. Except where notice or hearing is required by statute, this subsection shall not apply to interpretative rules, general statements of policy, rules of agency organization, procedure, or practice, or in any situation in which the agency for good cause finds (and incorporates the finding and a brief statement of the reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.'
 
 
 [7]
 It would therefore seem (even if it be assumed that the common law duties here in issue are within the purview of the APA) that those duties fall within an exception to the publicity requirements contemplated by 4(a) of the APA:
 'General notice of proposed rule making shall be published in the Federal Register (unless all persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law) * * *.' But see: Hotch v. United States, 212 F.2d 280, 283 (9th Cir. 1954); Compare criticism by Professor Davis, 1 Davis, Administrative Law, 6.10.