**TABLE BLUFF BAND OF INDIANS, et al., Plaintiffs,**

**v.**

**Cecil ANDRUS, et al., Defendants.**

**No. C 75 2525 WTS.**

United States District Court, N. D. California.

Sept. 21, 1981.

George Forman, California Indian Legal Services, Oakland, Cal., for plaintiffs.

David E. Golay, Asst. U. S. Atty., San Francisco, Cal., for defendants.

Charles P. Selden, County Counsel, Humboldt County, Eureka, Cal., for Steven Strawn, Tax Collector for Humboldt County.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is a civil action[1] brought by plaintiffs, a group of Indian people residing at the Table Bluff Rancheria,[2] against certain federal defendants,[3] alleging breach of trust and contract, and seeking declaratory and injunctive relief as well as damages. Jurisdiction against the federal defendants is asserted under 28 U.S.C. §§ 1331, 1346 and 1361.[4]

Suit is also brought against defendant Steven Strawn, tax collector for Humboldt County, California, alleging unlawful taxation of the Rancheria and seeking injunctive relief. Jurisdiction for this claim is founded on 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

The case is now before the court on plaintiffs' motions for class certification and partial summary judgment. The record before the court on the pending motions consists of the non-verified first Amended Complaint, the exhibits accompanying the motion for partial summary judgment, and the Declaration of Albert E. James (James' Decl.), one of the named plaintiffs and Chairperson of the Table Bluff Rancheria, in support of the motion for partial summary judgment.

*The Pleadings*

Plaintiffs' complaint makes essentially four allegations. It alleges breach of trust by the federal defendants in administering the California Rancheria Act of August 18, 1958, P.L. 85–671, 72 Stat. 619, as amended by the Act of August 11, 1964, P.L. 88–419, 78 Stat. 390 (hereafter the "Rancheria Act," or the "Act') and seeks declaratory and injunctive relief as well as damages for the

---

1. While this action was initially filed by plaintiffs on November 28, 1975, it has only been before this court since May 1, 1980.

2. The Amended Complaint lists the plaintiffs as the Table Bluff Band of Indians—the federally recognized governing body of the Table Bluff Rancheria; Herman Brown and Albert E. James, individually and on behalf of all others named as distributees in the final plan for the distribution of the assets of the Table Bluff Rancheria, or the Indian heir(s), assign(s), executor(s), administrator(s) or successor(s) in interest thereof; and Cheryl A. Seidner and Albert James, III, individually and on behalf of all others similarly situated as dependent members of the families of the distributees.

3. The Amended Complaint lists the federal defendants as Cecil Andrus, Secretary of the Interior; Patricia Harris, Secretary of Health and Human Services; and the United States of America.

4. Plaintiffs also assert jurisdiction under the Administrative Procedure Act (5 U.S.C. § 701 et seq.). However, that Act is not an independent grant of subject-matter jurisdiction to the federal courts. *Califano v. Sanders*, 430 U.S. 99, 104–07, 97 S.Ct. 980, 983–85, 51 L.Ed.2d 192 (1977).

distributees under the Act, their dependents and the Table Bluff Band. (Amended Complaint at claims 1–3 and 7–9). The complaint also seeks declaratory and injunctive relief and damages for violation of the Rancheria Act itself by the federal defendants in favor of the same three classes of plaintiffs. (Amended Complaint at claims 4–6 and 12–14). Third, the complaint alleges that the distribution plan drafted pursuant to the Act was a contract between the plaintiff-distributees and the federal defendants which the federal defendants breached. Under this claim, plaintiffs seek either rescission of the plan or damages for the distributees caused by the breach, as well as for their dependents as intended beneficiaries of the contract. (Amended Complaint at claims 10–11.) Finally, declaratory and injunctive relief is sought against the tax collector of Humboldt County enjoining him from assessing any further taxes on the Table Bluff Rancheria. (Amended Complaint at Claim 15).

### The Pending Motions

Plaintiffs have filed the pending motion for class certification contending that the classes of plaintiffs described in the Amended Complaint, i.e., the distributees of the Act, their dependents, and the Table Bluff Band—the federally recognized governing body of the Indians who reside at the Rancheria, meet all the requirements for class certification set forth in Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

Plaintiffs, on motion for partial summary judgment, contend that there is no genuine issue of material fact on any issue in this case except the amount of damages and seek all the declaratory and injunctive relief requested in the Amended Complaint as well as a declaratory statement that damages are recoverable in this action.

The federal defendants have filed a response which does not address the class

certification issue and which is otherwise in substantial agreement with the plaintiffs' summary judgment motion—agreeing that the Rancheria was wrongfully terminated, that the trust obligations of the United States to the Indian people of the Rancheria still exist, and that the Indian distributees of the Rancheria lands should be permitted, at their option, to reconvey their lands to the United States if they have not already conveyed those lands to good-faith non-Indian purchasers.

The Humboldt County defendant, Mr. Strawn, has filed no opposition nor any statement of non-opposition to the pending motions.[5]

### The Evidence

The evidentiary record above-described shows in substance and without dispute (except as specially noted), that for many years there were throughout California numerous small Indian communities called Rancherias, with title of the lands of these communities vested in the United States in trust for the resident Indians. Since the lands were held in trust, they could not be taxed by state or local authorities, see, *McCurdy v. United States*, 264 U.S. 484, 44 S.Ct. 345, 68 L.Ed. 801 (1924), and the resident Indians had no power to convey title to the land to others. The United States controlled the rancheria lands under the special fiduciary duty owed by the United States to the Indian people.

In 1958, Congress enacted the California Rancheria Act [P.L. 85–671, 72 Stat. 619–621], amended in 1964 [P.L. 88–419, 78 Stat. 390–91], which facilitated the termination of the trust relationship between the United States and the Indian people on 41 enumerated rancherias and reservations in California.[6] The Act provides a procedure for the termination of these rancherias and reservations and the distribution of assets, including property, to eligible Indians in fee simple.

**5.** Since the Humboldt County defendant has filed no opposition to the pending motions, all further references to the "defendants" in this Memorandum of Decision will refer to the federal defendants only unless otherwise noted.

**6.** Among the enumerated rancherias was the Table Bluff Rancheria. In 1964, the Act was amended to include all rancherias and reservations lying wholly within California.

The preparation of a plan for termination of the Table Bluff Rancheria is mandatory. (Sections 1 and 2(a) of the 1958 Act.) However, such a termination plan does not become effective until approved by a majority of adult Indians who would participate in the distribution. (Section 2(b) of the 1958 Act). Congress contemplated that such a termination plan be completed and the lands distributed not more than three years after it is approved. (Section 2(b) of the 1958 Act). Thus, under the Act, actual termination of the Rancheria is *permissive*, not mandatory, being dependent upon approval by a majority of the Indians who would participate in the distribution. *Duncan v. Andrus*, C-71-1572-WWS (N.D.Cal., March 22, 1977).[7]

Under § 3(c) of the Act (as amended), the Secretary of the Interior and the Secretary of what was then the Department of Health, Education and Welfare (H.E.W.) were given certain duties pertaining to installation of sanitation and irrigation facilities:

> Sec. 3. Before making the conveyances authorized by this Act on any rancheria or reservation, the Secretary of the Interior is directed:
>
> \*     \*     \*     \*     \*     \*
>
> (c) To construct, improve, install, extend, or otherwise provide, by contract or otherwise, sanitation facilities (including domestic and community water supplies and facilities, drainage facilities and sewage—and waste-disposal facilities, together with necessary appurtenances and fixtures) and irrigation facilities for Indian homes, communities, and lands, as he [the Secretary] and the Indians agree, within a reasonable time, should be completed by the United States: *Provided*, That with respect to sanitation facilities, as hereinbefore described, the functions specified in this paragraph, including agreements

with Indians with respect to such facilities, shall be performed by the Secretary of Health, Education and Welfare in accordance with the provisions of [42 U.S.C. § 2004a].[9]

In late 1959, a distribution plan was approved by the Table Bluff Rancheria and deeds to the individual parcels on the Rancheria were delivered to the distributees in June of 1960. Since that date, the lands have been subject to full state and county jurisdiction, including taxation. (James' Decl. at 4). The Termination Proclamation for the Rancheria was issued on April 11, 1961. 26 F.R. 3073.

The federal defendants concede that the Table Bluff Rancheria was not lawfully terminated because neither the Secretary of the Interior nor the Secretary of H.E.W. fulfilled their duties under Section 3(c) of the Act.

### Class Certification

■ The court agreed with plaintiffs' contention, unopposed by defendants, that the two classes of representative plaintiffs defined as (1) the distributees under the Act, and (2) the dependents of the distributees, each meet the requirements of Rule 23 of the Federal Rules of Civil Procedure which provides, in pertinent part, that:

> (a) One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are common questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> \*     \*     \*     \*     \*     \*

---

**7.** In *Duncan*, the primary issue was whether the United States government unlawfully terminated the Robinson Rancheria in Lake County, California.

**8.** H.E.W. has since been changed to the Department of Health and Human Services. *See* 45

F.R. 29642–43 (May 5, 1980) for designation of change of name.

**9.** 42 U.S.C. § 2004a provides certain authority to the Secretary of H.E.W. (now the Department of Health and Human Services) in regard to providing sanitation facilities and services.

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .

Thus, plaintiffs' motion for class certification of the above-described classes is granted.[10]

*Summary Judgment*

As noted, the federal defendants concede that they failed to meet the statutory conditions imposed by § 3(c) of the Rancheria Act. Consequently, the only real question before the court is the nature and extent of relief appropriate. Plaintiffs request considerable equitable and legal relief, some of which the defendants agree to, and others which they oppose. The court will treat the various types of relief prayed for separately.

A. *Equitable Relief*

1. *Return of the Land to Trust Status*

Plaintiffs first seek to invalidate the purported termination of the trust and Indian country status of the Rancheria and the Indian status of the people of the Rancheria, and to secure for plaintiffs the right to restore their Rancheria lands and their Indian allotments located outside of the Rancheria to federal ownership in trust for specific Indian individuals or tribal beneficiaries, their heir(s), legatee(s) or Indian successor(s) in interest.

Federal defendants agree to this relief with the exception of restoring the land to the status quo ante in trust for the *specific* Indian or tribe specified in the conveyance drafted as part of the termination of the Rancheria. Some question has also been raised about the status of the Table Bluff Band as the Rancheria's federally recognized governing body.

a. *Return of the Land to Specific Individuals or Tribes*

■ The defendants object to permitting the Indians to return their individually owned lands to the United States to be held in trust for the former Indian owners, their heir(s), legatee(s), Indian successor(s) in interest or whomever else they may specify. Defendants contend that plaintiffs may not return the land to the United States to be held in trust for individuals, but may only return the land to federal trust status on behalf of the Rancheria as a whole.

Defendants posit several statutory arguments suggesting that the Secretary of the Interior is limited in this case to holding land in trust for the Table Bluff Indians as a whole. The court, however, is cognizant of its own equitable powers to fashion appropriate relief. Regardless of what powers the Secretary of the Interior may have to award land to Indians in severalty, this court has broad powers to do equity to the parties. 5 U.S.C. § 706; *Reich v. Webb,* 336 F.2d 153, 158 (9th Cir. 1964). Invoking that power, the court believes that fairness dictates that the land be returned to the status quo exactly as it existed prior to the approval of the now void distribution plan. Thus, the lands should be returned in trust, at the option of the individual owners, for the benefit of the Indian(s) or tribe that possessed it prior to the distribution or the Indian heir(s), legatee(s) or Indian successor(s) in interest of such Indian(s) or tribe. *Smith v. United States,* No. 74–1016 WTS (N.D.Cal.1978); *Daniels v. Andrus,* No. C 74–1061 WTS (N.D.Cal.1978). The Indians may not, however, individually designate others for whom the land is to be held in trust, nor may they exercise any other powers over the land which they did not have prior to the distribution.

b. *Status of the Table Bluff Band*

■ The Table Bluff Band was the federally recognized governing body of the Rancheria prior to the attempted termina-

10. The remaining plaintiff, the Table Bluff Band, is an entity unto itself and it does not seek relief in a representative capacity; it par-

ticipates in this action as an individual plaintiff, not as a class representative.

tion of the Rancheria. The revocation of the Band's federally recognized status was not accomplished pursuant to the Rancheria Act since the planned termination of the Rancheria was never successfully accomplished under the Act. Thus, the Table Bluff Band retains its status as the federally recognized governing body of the Rancheria, eligible to participate in federal programs and benefits provided to federally recognized Indian tribes or bands.

In addition, the Band is eligible for retroactive and prospective participation in federal tribal programs available to federally recognized Indian tribes, bands, communities or organizations. (*See* 2, *infra*).

### 2. *Retroactive Participation in Federal Programs*

■ Plaintiffs seek to secure to the Indians of the Rancheria the right to participate prospectively and retroactively in the various federal programs from which they have been excluded by reason of the unlawful termination of the Rancheria.

Federal defendants agree to this relief with the exception of providing *retroactive* benefits. Defendants contend that the term "retroactive" is "ambiguous and meaningless except as applied to specific situations." Federal Defendants' Opposition to Motion for Partial Summary Judgment at 9. They assert that it would be speculative to consider at this juncture the potential difficulties posed by such retroactive participation.

The court disagrees. Defendants concede that plaintiffs were improperly divested of their status as Indians, along with the rights and privileges which accompany that status. Plaintiffs are entitled to recover whatever benefits (e.g., lost educational benefits) they were deprived of as a result of defendants' wrongful conduct where such recovery does not otherwise violate the dictates of this Memorandum of Decision. Defendants can easily determine the rights and privileges which accompany one's status as an Indian, and it should not be difficult to ascertain which of those rights and privileges plaintiffs were forced to relinquish during the period in which their Indian status was wrongfully terminated. Once that process is completed, the court sees no good reason why the awarding of those rights and privileges retroactively to the plaintiffs cannot be adequately carried out in some administrative fashion.

In addition, in the event that funds are not readily available to provide such rights and privileges retroactively, defendants shall be obligated to make a good-faith effort to seek and support the appropriation of sufficient funds to provide such rights and privileges.

Also, any eligible people who are unable now to avail themselves of services and programs which they could have utilized in the past had the Rancheria not been improperly terminated, shall receive priority in participating in future programs *or*, future benefits shall be enhanced by amounts equivalent to those which such persons should have received.

### 3. *Declare all Rancheria Land to be Indian Country*

■ Plaintiffs seek to have all of the land located within the boundaries of the Rancheria returned to its status as Indian country. "Indian country" is defined by 18 U.S.C. § 1151 as, in pertinent part, "(a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation."

Section 1151 has been construed to mean that any land located within the boundaries of an Indian reservation is Indian country, regardless of who holds fee simple title to the land. *Mattz v. Arnett*, 412 U.S. 481, 93 S.Ct. 2245, 37 L.Ed.2d 92 (1973); *Seymour v. Superintendent*, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346 (1962); *United States v. McGowan*, 302 U.S. 535, 58 S.Ct. 286, 82 L.Ed. 410 (1938).

Since the Rancheria was not effectively terminated and it, therefore, still exists, all land located within its boundaries remains Indian country. This is true even of land

which is retained by those who choose not to return to the government the parcels of land they received pursuant to the distribution plan.

Plaintiffs seek to have the Rancheria land returned to its status as Indian country apparently to strip the state and county governments of any taxing or regulatory jurisdiction over the land created by the termination plan.

The defendants concede that plaintiffs should have the federal services to which they are entitled as Indians restored to them, reversing the effect of the termination Act, since the purported termination of the Rancheria failed to comply with the statutory prerequisites. Defendant Strawn, the Humboldt County tax collector, having filed no opposition to plaintiffs' motion, must also be deemed to have conceded this point.

Any land returned to the United States would be untaxable as before, thereby destroying any jurisdiction over such land which Humboldt County may have exercised to assess and collect real property taxes thereon.

The federal defendants express concern that any declaration by this court on the power of the state or county to tax land might create uncertainty if any of the plaintiffs elect to retain their land in fee ownership, since land so retained would be expressly excluded from the protection of federal ownership.

The court does not share defendants' concern. It is manifest that in the context of this case, only land remaining in Indian ownership is exempt from state or local taxation or other civil regulatory jurisdiction. *Bryan v. Itasca County,* 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976); *Santa Rosa Band v. Kings County,* 532 F.2d 655 (9th Cir. 1976), *cert. denied* 429 U.S. 1038, 97 S.Ct. 731, 50 L.Ed.2d 748 (1977)). Thus, Rancheria land designated as Indian Country will not be subject to state or local taxation or other civil regulation only so long as such lands remain in Indian ownership.

### 4. *Aid in Returning Land to Trust Status*

■ The federal defendants agree to provide cooperation and assistance to Indians desiring to return individual parcels of land to government ownership in the form predating termination. This includes providing or paying for services and assistance necessary to effect the return to trust status including surveys, title searches and recording, as well as removing any non-consensual clouds, liens or encumbrances on title to Rancheria lands which trust status would have prevented.

Defendants object, however, to any order by this court directing them to issue trust deeds or patents in any form since they do not believe the government has any authority to do so. Defendants' objection is overruled to the extent that it conflicts with the order of this court elsewhere in this Memorandum of Decision permitting plaintiffs to reconvey legal title to the distributed land back to the United States to be held in trust as specified in the instrument of conveyance.

### 5. *Improvements to Lands Retained in Fee Ownership*

■ Plaintiffs contend that the appropriate federal defendants should be required to provide for those lands not returned to trust status such improvements as would render the lands "lawfully and practically usable, and/or saleable." Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Partial Summary Judgment at 68. Plaintiffs offer no legal basis for claiming improvements to land so retained. Furthermore, the court believes it would be inequitable to require the government to essentially carry out the terms of the distribution plan at this late date as to some of the Indians when the government has conceded its failure to make the improvements required under the plan and indicated its willingness to void the plan and return the Indians to the status quo prior to the plan's approval. Moreover, since the owners who choose to retain title

will do so with full knowledge that the government has failed to make the improvements required by the Act, the court does not believe that those who retain title will be unfairly prejudiced by doing so.

### 6. Obligation of the Secretary of the Interior to Reacquire Lands

■ Plaintiffs seek equitable relief in the form of a declaration by the court affirming the obligation of the Secretary of the Interior to reacquire Rancheria lands for the Indians whenever such acquisition may be effected.

Defendants agree to reacquire land conveyed to them by plaintiffs pursuant to a reversal of termination, but they deny authority on their part absent Congressional action to take Rancheria land in the possession of third parties.

In their reply papers, however, plaintiffs assure the court that they seek only a declaration ordering the Secretary to accept into trust Rancheria land not presently owned by Indians "if and when the non-Indian owner(s) of such land should be willing to convey such land to the United States at no cost to the government." Plaintiffs' Memorandum in Reply to Federal Defendants' Opposition to Motion for Partial Summary Judgment at 14. The court believes that plaintiffs' request, when so defined, avoids the objection raised by the federal defendants.

### 7. Alternative Relief

Plaintiffs seek and the federal defendants do not oppose a declaration by this court that the grant of relief in this action in no way prejudices whatever rights plaintiffs may have to challenge in other proceedings the validity of conveyances of Rancheria lands to non-Indians.

### B. Damages

Plaintiffs also seek money damages from defendants, basing their claim on several alternative theories: 1) breach of fiduciary duties; 2) breach of statutory duties under the Rancheria Act; 3) breach of contract created by the distribution plan, and 4) a Fifth Amendment taking of vested rights.

■ Plaintiffs initially contend that the failure of the federal defendants to comply with the provisions of the Rancheria Act constituted a breach of the general fiduciary duties owed by the government to Indians for which damages are recoverable.

To successfully advance this claim, plaintiffs must distinguish *United States v. Mitchell*, 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 *reh. denied* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980), wherein the United States Supreme Court held that the General Allotment Act of 1887, ch. 119, 24 Stat. 388, as amended, 25 U.S.C. §§ 331–349, does not authorize an award of money damages against the United States on a breach of trust theory for mismanagement of forests located on lands allotted to Indians under the Allotment Act.

Plaintiffs note several factual distinctions between *Mitchell* and the instant case, but the court is convinced that *Mitchell* nevertheless applies to the case at bar since the Supreme Court vacated and remanded in light of *Mitchell* a case involving contentions essentially identical with this one. *Duncan v. United States*, 597 F.2d 1337 (Ct.Cl.1979), *vacated* and *remanded* 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 255 (1980).

In *Duncan, supra*, 597 F.2d 1337, the United States Court of Claims ruled on the same issue presented here that in an action by the Pomo Indians of the Robinson Rancheria in Northern California for damages arising from invalid termination by the federal government of their Rancheria status under the Rancheria Act, a trial court *should* award damages directly due to the United States trustee's proven mismanagement of the Indians' land or physical property, the value of federal services improperly withheld, and damages directly due to loss of tax immunities during the period of invalid termination. *Id.*, at 1345–47.

The Supreme Court's vacation and remand of *Duncan* in light of *Mitchell* persuades this court that *Mitchell* applies to the instant case and that damages are not

recoverable from the United States for improperly carrying out the Rancheria Act.

■ Plaintiffs next seek damages for breach of the Rancheria Act itself. This court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress." 28 U.S.C. § 1491 (Tucker Act). Plaintiffs contend that a claim against the United States is possible based on the Rancheria Act. While this may be true, a claim for money damages further requires that the statute be one which can "fairly be interpreted as mandating compensation by the Federal Government for the damages sustained" by the breaches thereof. *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976), quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967).

■ Plaintiffs point to several portions of the Rancheria Act which refer to various benefits to be given by the federal government to the Indians in exchange for the Indians' consent to the termination of their Indian rights and status. E.g., § 2(c) ("Any grantee under the provisions of this section shall receive an unrestricted title to the property conveyed . . . ."). All of the language cited by plaintiffs, however, refers to benefits given to the Indians as part of the government's *proper* administration of the Act. There is no language in the Act which deals with an improper administration of its terms.[11] The regulations promulgated under the Act are in accord. *See* 25 C.F.R. 242, et seq. (1959 and 1964). Thus, this court does not believe the Act can fairly be interpreted as *mandating* compensation by the federal government for the breach of its statutory terms when the Act makes no reference at all to relief for Indians from improper conduct by the government in administering the Act.

■ Plaintiffs also seek damages on a breach of contract theory, alleging that the distribution plan constituted a contract between the distributees and the federal government, with the plaintiff-dependents as intended beneficiaries thereof. A termination act does not create a contract between the government and the Indians for which the government would be liable for breach absent some definite expression of contractual intent in the statute. *Klamath and Modoc Tribes, et al. v. United States*, 193 Ct.Cl. 670, 697 (1971); *see also Choate v. Trapp*, 224 U.S. 665, 671, 32 S.Ct. 565, 567, 56 L.Ed. 941 (1911) (Indian tribes are regarded as "dependent nations, and treaties with them have been looked upon not as contracts, but as public laws which could be abrogated at the will of the United States.")

■ Plaintiffs concede that the termination act does not create a contract; they contend instead that the distribution plan drafted pursuant to that Act creates a contract. The court sees no reason why the rationale in *Klamath, supra*, 193 Ct.Cl. 670, is not equally applicable to a distribution plan, particularly where, as here, the drafting of a distribution plan is a mandatory requirement under the Act. California Rancheria Act of August 18, 1958, P.L. 85–671, 72 Stat. 619, § 2(b). As with the statute in *Klamath*, the final distribution plan contains no definite expression of an intent on the part of the Bureau of Indian Affairs to bind the United States,[12] nor does the legislative history behind the Act imply such an intent. On the contrary, the plan is replete with indications that its drafting was governed by Public Law 85–671 (the Rancheria Act), and not by the voluntary

---

11. Section 2(b) of the Act provides that any Indian who feels unfairly treated by the proposed distribution plan can make his feelings known to the Secretary of the Interior, but the plan may still be properly approved by a majority of the Indians despite such objection.

　Section 7 provides essentially that while individuals will lose their status as Indians *under a proper administration of the Act*, they may still share in judgments recovered against the United States on behalf of Indians.

　Section 10(a) provides that no Indian may bring a claim against the United States based on a proper administration of the Act.

12. Nor is there any language in the Act itself which authorizes the Bureau of Indian Affairs to so bind the United States to a distribution plan.

association of parties that normally characterizes contractual relations. *See* Final Distribution Plan at 1–3, 6. Moreover, if a treaty between Indians and the United States is not considered a contract binding upon the United States (*Choate v. Trapp, supra,* 224 U.S. at 671, 32 S.Ct. at 567), it is difficult to see how a mere distribution plan can be viewed in that way.

■ Finally, plaintiffs seek damages on a theory that they were deprived of vested rights without adequate compensation in violation of the Fifth Amendment by the unlawful termination of the Rancheria. Plaintiffs cite and mainly rely upon *Choate v. Trapp, supra,* 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941. In *Choate,* certain Oklahoma Indians held fee-patent allotments to lands which were exempt from taxation for up to 21 years as long as title remained in the original allottee, and which were subject to certain restrictions on alienation. Thereafter, Congress enacted a statute which removed the restraints on alienation and also attempted to subject the lands to taxation. 35 Stat. 312 (1908).

The court held that while the statutory restrictions on alienation imposed a limitation which could be terminated in the exercise of Congress' plenary power over Indian affairs, the statutory tax exemption was a vested right which Congress could not constitutionally eliminate without the consent of or payment of just compensation to the Indian owners of that right. *Choate v. Trapp, supra,* 224 U.S. at 671–78, 32 S.Ct. at 567–70.

Defendants contend that *Choate* is distinguishable from the case at bar because in *Choate* the Indians held their land in specific, individual allotments with a fee-patent thereto, while the Table Bluff Indians had only an assignment to their land. Thus, defendants contend, no compensable right was taken by termination and distribution, and no inverse condemnation under the Fifth Amendment occurred.

Plaintiffs argue that the distributees of the Table Bluff assets acquired vested beneficial interests in those assets upon approval of the distribution plan. While the regulations drafted pursuant to the Act upon which plaintiffs rely state that the Indians acquire "vested" interests in the property once the distribution plan is accepted by the Indians and approved by the Secretary of the Interior (25 C.F.R. § 242.7 (1959)), the regulations obviously contemplate a valid acceptance and approval. The court notes, however, that elsewhere in their complaint, plaintiffs allege (and the federal defendants concede) that the distribution plan was improperly accepted and approved and is therefore void. (Amended Complaint at 10.)

This court will not permit plaintiffs to ratify the distribution plan "to the extent that it [allegedly] created vested rights in individual distributees" (Amended Complaint at 32–33), while plaintiffs simultaneously void the plan in all other respects.

This action by the court is consistent with the factual situation in *Choate, supra,* 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941, where the Indians did not attempt to void the distribution plan. Rather, they challenged a subsequent statute which sought to eliminate a tax exemption granted under the plan.

In summary, the court holds that while plaintiffs are entitled to the equitable relief designated in this Memorandum of Decision, they are not entitled to recover money damages against the United States on any of the theories which they have advanced before this court.

*Conclusion*

Based on the analysis set forth above, plaintiffs' motion for class certification is granted and plaintiffs' motion for partial summary judgment is granted in part and denied in part.

Relief is granted in accordance with this Memorandum of Decision.

Finally, there being nothing further for this court to decide in this case, the action is hereby dismissed.